Langworthy v. The City of Dubuque.

---

LANGWORTHY v. THE CITY OF DUBUQUE *et al.*

16  271
97  295

1. MUNICIPAL CORPORATION. The Legislature has the constitutional power to create a municipal corporation.

2. SAME: BOUNDARIES AND TAXATION. The power to create a municipal corporation carries with it the power to fix the geographical boundaries thereof, and to change the same by extension or contraction. Also, to

Langworthy v. The City of Dubuque.

provide for such corporation a local government, to clothe it with the power of taxation for local purposes, with or without the consent of those who may be affected thereby.

3. SAME. While the enlargement of the boundaries of a municipal corporation whereby the property of individuals is brought within the corporate limits without their consent, and thereby subjected to municipal taxation, may not be an infringement of the Constitution by taking private property for public use; it may so operate when such extension is unreasonable, and embraces lands and territory not needed for building and population, but which is taxed for the benefit of the territory which is thus needed and occupied.

4. SAME: WHEN COURTS WILL INTERFERE. The courts will not interfere with the exercise of the power to extend the corporate limits, but they will restrain municipal taxation where practicable, in cases in which it is shown that the proprietor of the property taxed cannot be benefited in a municipal point of view. (*Morford* v. *Unger*, 8 Iowa, 884.)

*Appeal from Dubuque District Court.*

TUESDAY, JUNE 7.

Two cases of the same title and involving the same facts.

*Allison & Crane* for the appellant.

*Cooley & Eighmey* for the appellee.

LOWE, J.—The questions submitted in the above cases are nearly identical, and while they are not dissimilar in principle from the cases of S. M. & E. Langworthy, reported in 13 Iowa, 86, following the case of *Morford* v. *Unger*, 8 Iowa, 82; yet from the assistance of a large city map, exhibiting the situation of the property and its relative local position on the plat and to the improved parts of the city, we now understand the facts differently from what they were as presented in the cases referred to, and we feel impelled, consequently, to come to a different conclusion.

The plaintiff seeks to restrain the defendant from taxing, for road, school and municipal purposes, certain tracts or parcels of land, situated outside of the old city lines, but within the suburbs and boundary thereof as extended by

an act of the Legislature passed in January, 1853. The application below was deemed inadmissible, and the bill dismissed.

We apprehend no question arises in regard to road and school taxes, as these can, confessedly, be levied upon property situated within their respective districts.

It does not follow, however, that taxes for general city purposes can be levied upon all property which the Legislature may include within the corporate limits of a city by enlarging the limits thereof. The legality of such a tax depends upon other principles, things and contingencies, besides mere boundary lines.

We will state, *in limine*, a few general propositions which we suppose are no longer open to controversy.

*First.* The creation of corporations for municipal purposes is within the constitutional competency of the Legislature.

*Second.* This power carries with it the right to fix, and subsequently to the change, the boundary by extending or contracting the same; also to provide such corporation with a local government, to cloth it with the power of taxations for local purposes, &c., and this with or without the consent of those who may be affected thereby.

*Third.* While the enlargement of the boundaries of a town, whereby the property of individuals is brought within the corporate limits without their consent, and subjected to taxation for town purposes, may not be an infringement of the constitution by taking private property for public use; yet, that it may become so, by an unreasonable extension of the town limits, in taking in lands and territory not at all needed for buildings and population, and taxing the same for the benefit of that portion of the corporate domain which may be peopled and occupied. In all such cases, while the courts will not interfere with the boundary limits, for the reason that mere extension, with-

out the municipal imposition of taxation, is not in itself detrimental; yet that they will control and limit the taxing power, whenever practicable, to that point or line where it ceases to operate beneficially to the proprietor in a municipal point of view.

In obedience to this rule or principle, this court, in the case of *Morford* v. *Unger*, *supra*, held, that the plaintiff's farm of one hundred and three acres, brought within the corporate limits of the city of Muscatine, by a legislative enlargement of its boundary lines, could not properly be taxed for the support of the city government and objects connected therewith; that it was a mile distant from the old corporate lines, and equally distant from any portion of the city laid off into lots; that the same was not needed for the spread of houses or a growing population; that it was used exclusively for farming purposes; and that the act subjecting his land to taxation at the will of the city council, and for its benefit, was an appropriation of his individual means for the use of the city, without any local advantage accruing to him in return, which was in effect the taking of private property for public use, without any just compensation.

Similar to this in its facts, but not quite so strong for the plaintiff, is the case of *City of Covington* v. *Southgate*, reported in 15 Ben. Monroe, 491, where the same general doctrine is laid down. The prominent idea upon which each of these cases turned was, not that they were farmers and cultivated their lands in corn, potatoes, vegetables and fruits, for this is frequently done upon ground in cities, but that their lands were too remote to be needed for houses and population, and especially, because they could receive no equivalent for the taxes levied and paid, in the way of protection from the local government, or other benefits from its police regulations. Hence, taxation against them or their property, in such case, would be the taking

of private property for public use, without .compensation, within the meaning of the Constitution.

Now let us see whether the facts of the cases under consideration bring them within the purview of the above principles. As we understand them, they are as follows: . At the time of the extension of the city limits, the population of Dubuque had flowed over the old boundary on the west, and was settling itself upon the mineral lots outside and adjacent thereto. The map of the city, which accompanies the record, and was by agreement made evidence, shows the old and the new corporate limits, the city . proper, and all the various additions thereto, together with the mineral lots, their numbers and boundaries, and of which the new extension is mainly composed.

It gives us a very clear idea of the relative location and position of the several lots, upon which the plaintiffs claim that they are not bound to pay a corporate tax. From it, as well as the evidence in the case, we learn that mineral lot 71, a fraction over three acres, and lot 73, originally of some seventy or eighty acres, are situated just exterior and adjoining the west line of the old corporation. The latter lot has been subdivided into a number of smaller lots, ten to twenty acres each, upon which private residences have been erected. Among these are the plaintiffs'. They have adorned their respective lots with fine homesteads, garden grounds, parks and orchards. In. their vicinity, on all sides, are quite a number of other residences, some of the occupants of which, with the plaintiffs, transact and carry on their business in the city proper. The city plat aforesaid shows streets intersecting and running near these lots, being extension of streets from the old part of the. town. Immediately west of the plaintiffs' residences is mineral lot 158, subdivided into two acre lots. A short distance northwest from them are the Mount Pleasant and the Bradstreet subdivisions and additions to the city of

Dubuque, regularly platted and laid off into small building lots. Then, again, some half a mile or more west, or a little north of west, are Giliom's, Burton's and Findley's large additions to the city, greatly improved and built upon, called West Dubuque, between which and the old part of the city are streets and thoroughfares kept open and maintained at the expense of the corporation. The plaintiffs also own each a lot of fourteen or fifteen acres, located on mineral lot 322, upon which they object to pay a corporate tax. This mineral lot is situated in the northwest part of the new extension, and was formerly called the Davis farm, of some eighty acres. The map shows that this Davis farm has been laid off into several hundred lots of various sizes, from small business lots to out lots of several acres for private residences; that it is intersected with streets and alleys, part of which are now used as such, the whole being an addition to the city of Dubuque.

There are two other pieces of ground belonging to the plaintiff, L. H. Langworthy, of nine and twelve acres each, being parts of mineral lots 207 and 316, both situated near Eagle Point avenue, on either side of which the ground is laid off into town lots, far beyond where the tracts in question are located. The mineral lot number 207, is bounded on the whole north line thereof by the town lots laid off on said avenue. The same is the case with lot 316, which is on the north side of said avenue, and is said to be a rocky barren waste, yet all around it the land is laid off and platted as town property. What proportion of it is built upon and improved, the evidence does not inform us; yet, as a matter of fact as well as law, all portions of the city domain which are laid off and platted as business and building lots, are, as we suppose, subject to a corporation tax. When this is paid, we are to presume that the city authorities will apply it equitably to the protection of the inhabitants and improvement of every portion

of the town paying the same. But this cannot be done without affecting, more or less beneficially, the plaintiffs and their property, because of the local attitude which we have seen they hold to the new streets laid out, and the various new additions made to the city of Dubuque, which seem to be on every side of them, and which cannot receive the benefits of the city police and regulations in its various forms of protection and improvement, without sharing it in a greater or less degree with the plaintiffs in these cases. Relatively, as we said before, they occupy a place and position on the map of new extensions of Dubuque, evidently different from that held by Morford, of Muscatine, or Southgate, of the city of Covington, to their several cities, and hence the principle of immunity from city burdens laid down in these cases, has no application here. On the other hand the case of *Cheaney* v *Hooser*, 9 B. Mon., 333, is very similar in all its main facts to the ones at bar, where the Court, Chief Justice MARSHALL delivering the opinion, held that the plaintiff, in that case, was bound to pay the assessments made upon his property, although living upon the new extensions of Hopkinsville, and resisting the same for similar reasons, now urged by the parties to these suits. We refer to that case as sustaining the conclusions, in all essential particulars, which we have arrived at in this.

We are not insensible that abuses and inequalities will often occur in levying these city burdens, resulting especially from an enlargement of their boundaries; but these in the main should find their correction in a wiser and more discreet administration of the city government, the authorities of which should have their assessments made with the utmost care and discretion, and always with a special regard to the value and location of the property, and the proportional benefits which the same will be likely to receive from the disbursements of the local revenue collected. Affirmed.