JAMES H. WINDSOR v. POLK COUNTY and CITY OF DES MOINES, Appellants.

City Taxes: EXEMPTIONS: *Agricultural lands.* Acts Twenty-third General Assembly, chapter 1, section 3, providing that no lands

included in an extension of the corporate limits of the city of Des Moines that had not been divided into lots of ten acres or less, and which were in good faith occupied and used for agricultural and horticultural purposes, should be subject to any tax save a road tax, does not apply to property which consists of a tract of sixteen acres, valued at $20.000, occupied as a dwelling place, with a dwelling and other improvements thereon valued at $30.000, not platted nor divided by streets or alleys, fronting on a prominent city street and having water and gas, many fine residences being in the neighborhood and the place being bought and used as a home.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

SATURDAY, OCTOBER 7, 1899.

ACTION to restrain the collection of certain taxes levied against the real estate of plaintiff. From a decree enjoining the collection thereof, defendants appeal.—*Reversed.*

*J. E. Mershon* and *L. W. Bannister* for appellants.

*Cummins, Hewitt & Wright* for appellee.

WATERMAN, J.—Plaintiff's property was taken into the city of Des Moines by the extension of the corporate limits had under chapter 1, Acts Twenty-third General Assembly. Section 3 of that act is as follows: "No lands included within said extended limits of such city, which shall not have been laid off into lots of ten acres or less, or which shall not subsequently be divided into parcels of ten acres or less, by the extension of streets and alleys or otherwise, and which shall also in good faith be occupied and used for agricultural or horticultural purposes, shall be taxable for any city purpose, except that they may be subjected to a road tax to the same extent as though they were outside the said extended limits, and which road tax shall be paid into the city treasury." Plaintiff claims that under this statute his property is exempt from any except road taxes, and the taxes in controversy are not of

that character, but are for various other municipal purposes. The undisputed facts as to plaintiff's property are that it is a single tract of about sixteen acres, unplatted, and not divided by streets or alleys. It fronts on Grand avenue, a prominent street, which is sewered, and contains gas and water mains, at this point. At the time this action was brought the curbing had been set preparatory to paving the street. A line of street cars runs one block north of the property. The land extends along Grand avenue five hundred and thirty-five feet. Back from the street one hundred and sixty feet, upon a lawn, is plaintiff's dwelling, which costs some twenty thousand dollars, and the other improvements, which consist in part of stable, outbuildings, and greenhouse, cost about ten thousand dollars. The land alone is worth twenty thousand dollars. Some of the land is in pasture, upon which plaintiff keeps his horses and cows. A part is in garden, and a large part in lawn. There are numerous other fine city residences in close proximity along this street. Plaintiff purchased the property for a home many years before the limits of the city were extended, and he still occupies it as such. He claims that he uses it in good faith for agricultural purposes, although land for that purpose in this locality is worth but five dollars per acre per annum. Plaintiff's counsel rely largely upon *Winzer v. City of Burlington,* 68 Iowa, 279, decided under a similar statute, to sustain the finding of the trial court, and we must say the facts in that case are in many respects very much like those we have here; but we cannot regard it as controlling, for, as was said in *Farwell v Manufacturing Co.,* 97 Iowa, 286, neither in that or any other of the previous decisions of the court was the meaning of the words "good faith" considered. There must be some rule by which the facts in each case are to be measured. One who raises flowers, upon a city lot may, in a certain sense, be said to do so in "good faith"; but if it is his home, and the flowers are raised for the purpose of beautifying it and gratifying the owner's taste, the use is not such

as is contemplated by the statute.  If one makes a garden upon his home lot, or pastures his horse or cow upon it, these facts would not alone indicate that his lot was agricultural property.  In our opinion, the statute was intended to exempt lots of more than ten acres, which are used for the purposes mentioned, as a source of income or profit; and when the horticultural or agricultural use is merely contributory to the comfort or convenience, or for the purpose of adorning the home, it cannot be said to be in "good faith," within the meaning of the law.  Applying this rule, and it clearly appears that the property is not exempt.  It is an elegant city home—so valuable that horticultural or agricultural uses are matters of expense rather than sources of income.  As it stands, no one would think of calling this place a "farm," or denominating its spacious grounds a "market garden."  The evidence offered to show that some income was had by plaintiff, at times, from garden produce, is of such a character as to make it clearly appear that chance incidents are seized upon to sustain the claim of good faith in the cultivation of this land.  The cases in which similar questions have been passed upon by this court will be found collected in the *Farwell Case.*  We need not again review them.  It is enough to say that none of them announces a principle that conflicts with the conclusion here reached, and the line of reasoning pursued in the *Farwell Case* supports the rule as we have stated it.  In the *Winzer Case,* to which we have referred, the bona fides of the use was not questioned.  "Good faith" seems to have been inferred as a matter of course by the court from the fact of the use.  For the reasons given, the judgment of the trial court must be REVERSED.