J. H. LaGrange, Appellee, v. W. C. Skiff et al., Appellees, The City of Storm Lake, Iowa, Intervener and Appellant.

APPEAL AND ERROR: Appealable Judgment—Action to Enjoin Tax
1   —Amount Involved. A judgment or order, in an action to enjoin the levy and collection of present and future taxes, is appealable irrespective of the amount of taxes involved. (Secs. 4101, 4110, Code, 1897.)

TAXATION: City and Town Taxes—Agricultural Lands. Lands in
2   good faith occupied and used for agricultural purposes, and not subdivided into parcels of ten acres or less, are not taxable for general city and town purposes. (Sec. 616, Sup. Code, 1913.)

PRINCIPLE APPLIED: Plaintiff owned an undivided and unplatted 38 acres to the west of the city. The corporate limits were so enlarged as to extend to plaintiff's west line. The land was rented for $13 per acre and was used for agricultural purposes, some 25 acres being in corn, some four acres in house, grove and nursery stock and the balance in pasture. The rental value was increased somewhat by reason of *proximity* to the city, but not because it was *within* the corporate limits. One street touched the southeast corner of the land. A road ran along the south side

of the land, but no city funds were expended thereon. There were some sidewalks in the neighborhood. There were two near-by gas posts put in by a former owner but never lighted by the city. The nearest city water main was 1,000 feet from the residence. The nearest street light was 856 feet from the nearest corner of the land. *Held,* the land was not taxable for general city purposes (library tax excepted).

*Appeal from Buena Vista District Court.*—Hon. D. F. Coyle, Judge.

Monday, May 10, 1915.

Petition for Rehearing Denied Aug. 13, 1915,·
(Because not filed in accordance with rules).

Action in equity to secure the cancellation of a tax alleged to have been erroneously and illegally assessed and levied against plaintiff and against his property located within the present corporate limits of the city of Storm Lake, the tax being the levies made for city or municipal purposes for the year 1912. Plaintiff asks that defendants be enjoined from selling said property to enforce the collection of the tax. The city intervened, claiming that the tax was a legal and valid tax. The cause was tried November 21, 1913, and a decree rendered in favor of plaintiff, cancelling all levies and assessments for city or town purposes, and particularly for those purposes designated as the city fund, water fund, light fund, park fund, city bond fund, library fund, sewer fund, fire fund, or water bond fund. The defendants were enjoined from enforcing the collection of said tax. The city appeals. —*Affirmed.*

*Faville & Whitney,* for appellant.

*James De Land,* for plaintiff, appellee.

*Guy E. Mack,* for defendants, *Skiff* and *Bennett,* appellees.

Preston, J.—1. Appellee has filed a motion to dismiss the appeal on the ground that this court does not have juris-

diction, for the reason that the amount in controversy, as
shown by the pleadings, does not exceed one

1. **Appeal and error: appealable judgment: action to enjoin tax: amount involved.**
hundred dollars, and there has been no certificate of the trial judge, as provided by section 4110 of the Code; that the only purpose of the action was to cancel the tax; that the
removal of the apparent lien or cloud upon the title to plaintiff's land is only incidental and is relief which would follow as a matter of course with the cancellation of the tax, and therefore no interest in the real estate is involved. Cases are cited to this point.

The action was commenced for an injunction. The prayer of plaintiff's petition is for a judgment and decree restraining and enjoining the defendants, or their successors in office, from selling or advertising for sale the land or any portion thereof, or collecting any portion of the tax, for any city purpose; that that portion of the tax be annulled and cancelled, and that any apparent lien upon the land be cancelled and ·removed; also that the auditor and his successor in office be enjoined from including in any tax levy against the land, or entering in the tax list for future years, any levy made for city purposes on said land so long as the same is used for agricultural and horticultural purposes. An injunction was granted in the final decree. Section 4101, Code, provides that an appeal may also be taken to the Supreme Court from: "(3) An order which grants or refuses, . . . dissolves or refuses to dissolve, an injunction," etc. The motion to dismiss is overruled.

2. There is but little, if any, dispute in the testimony. The only question in controversy between plaintiff and the

2. **Taxation: city and town taxes: agricultural lands.**
intervener is as to whether or not the land described in the petition is subject to taxation for city purposes under section
616 of the Code.

Plaintiff's property consists of about thirty-eight acres in the west part of the city. The land was not embraced

in the corporate town as originally incorporated. The corporate limits were extended in 1890 so as to include the land in controversy. The west boundary line of the incorporated town, after such extension, is the west line of plaintiff's land. Since said date, the town of Storm Lake has become a city of the second class. Plaintiff does not carry on the land himself, but has it rented for five hundred dollars a year, or thirteen dollars an acre. About twenty or twenty-five acres of it has been in corn and other crops; about four acres is taken up with the house, grove and nursery stock, and the balance is in pasture. There is no dispute in the record as to the use of the property for agricultural purposes, and we find nothing in the record to indicate bad faith on the part of the owner in so using it. The land has never been platted.

Appellant claims that the land in controversy was in such close proximity to the settled and improved parts of the city that the corporate authorities cannot open and improve its streets and alleys and extend to the inhabitants thereof its usual police regulations and advantages without incidentally benefiting said land and enhancing the value of the same. It relies on the following cases: *Fulton v. City of Davenport,* 17 Iowa 404; *Brooks v. Polk County,* 52 Iowa 460; *Tubbesing v. City of Burlington,* 68 Iowa 691; *Farwell v. Brick Mfg. Co.,* 97 Iowa 286; *Windsor v. Polk County,* 109 Iowa 156.

The *Fulton Case* was decided before section 616 was enacted, and lays down the rule substantially as contended by appellant,—that, under such circumstances, the power to tax the property arises. But it was also said in that case that in the exercise of such power, great care and circumspection should be observed, lest, perchance, injustice and oppression may ensue.

The rule was approved in the *Brooks Case,* where it was held that the land was taxable for municipal purposes because of the facts which are set out in the opinion. Cities ought not to extend their limits and unnecessarily include farm land for the purpose of increasing their revenues, and, on the other

hand, a person whose property is included within the city limits and who is benefited by expenditures of city money, who has the conveniences incident thereto, and who comes within the rule announced by the cases, ought to pay city taxes.

As stated in the *Fulton Case,* and approved in the *Brooks Case,* it is apparent that every such case will have to be determined upon its own peculiar circumstances, without regard to any definite or fixed rule, and hence, doubtless, the decision in some instances will appear quite arbitrary, and perhaps unsatisfactory.

In the *Tubbesing Case,* the facts are not set out, but the court concluded that plaintiff had not affirmatively shown facts which entitled his land to exemption.

In the *Farwell Case,* it was held, substantially, that a mere temporary occupation and use of land for agricultural purposes, when purchased for speculation, with intent to lay it out into lots and sell them, is not a good-faith occupancy and use for agricultural purposes within the meaning of the statute.

The *Windsor Case* was in regard to a tract of sixteen acres, worth $20,000, on which was the owner's dwelling house, which, with improvements, was worth $30,000, and the tract, which was not platted and divided by streets, faced a prominent city street which, at that point, contained sewers, gas and water mains, and it was held the land was taxable.

In *Allen v. Davenport,* 107 Iowa 90, it was held that lands within the limits of a city are not used and occupied in good faith for agricultural or horticultural purposes so as to be exempt when a portion only is used for farming and the remainder for lumber yard, stone quarry, an ice house, pasturage and a nursery, and is close to a well-settled part of the city, having many of the city conveniences.

But we are of opinion, from a reading of the record, that the facts in the instant case are not sufficient to bring the case within the rule. But little, if any, benefits accrued to

plaintiff's land from expenditure of city taxes. It is true plaintiff testified that the rental value of this land is somewhat enhanced by reason of the land's being in close proximity to the city, but not because it was included within the corporate limits. This would ordinarily be true if the land were just outside the city limits. Another witness puts it, that the land being in such close proximity to the city, adjoining its streets and streets abutting on it, the extension of the street lights and water mains on another street and the expenditure of money in the west end of town increases the value of this property. Plaintiff testifies:

"I did at one time discuss with Mr. Brunson, an engineer, the question of making surveys and platting this land, and told him that if I did, I wanted him to do it for me, but I never decided to do it. I bought this land because I thought it would advance in price and I thought I could sell it. I knew because of its close proximity to Storm Lake, and the manner in which Storm Lake was building up, that it might become valuable in the future for town lots, but I could have made the same money on most any kind of land in the county anywhere else."

It appears that plaintiff has contracted to sell twenty-six acres of this land, and this, as we understand it, since the suit was brought, or at least since the tax for 1912 was levied. The prospective purchaser testifies that he expected to farm the twenty-six acres, and plaintiff testifies that he expected to farm the remaining twelve acres, and, in fact, the entire property was farmed for the year 1913.

We shall not attempt to set out all the facts, but enough to show the general situation. There are no houses west of plaintiff's within the corporate limits. Four or five new houses have been built within a year or two east and southeast of plaintiff's property, and within a block or two. Sixth Street in the city extends to the southeast corner of plaintiff's property. For many years, and before the city limits were

extended west to include the land in controversy, there was a public highway running west on the south side of plaintiff's land to the west line thereof. But the evidence is that no city money has been expended upon this road. Plaintiff's house is some distance north from this road, with a private way over plaintiff's lands from the street to the house. There is a street one block south of plaintiff's property, running east and west, on which there is a cement walk a part of the way. The land south of plaintiff's property has not been platted, but is in subdivisions of from one and a half to eleven acres. Plaintiff's land extends north from the highway above referred to, and which interveners call Sixth Street, to the railroad. There is a cement walk a part of the way from the southeast corner of plaintiff's land west to the private driveway which runs north to his house, but this was put in by a former owner of the property. There is a gas post at the south line of plaintiff's property in the highway and near the private driveway going to plaintiff's house, and another at or near the southeast corner of plaintiff's land, and a gas pipe in front of the street or highway south of the land. But the evidence shows without dispute that in former years, the property in controversy was owned by one Unger, who farmed the land and lived upon it with his family as his home. At the same time, he was the owner of a gas plant in the city and held a franchise to use the streets and alleys for his gas pipes; and under these conditions, at his own expense, and for his own private use, he extended a gas pipe from his house to one of the city mains and erected along this line two iron posts for street lights. The city had nothing to do with it, and the lamps were never lighted by the city nor for the city. There is no other road or street along plaintiff's property except the one before referred to on the south; the land northwest and south, or much of it, is farm land. There are no water pipes of the city extending out to or touching this land. The main is 896 feet from the

corner of the land, and 1,000 feet or more from the building. The nearest street light is 856 feet from the nearest corner.

From these and other circumstances in the case, and from all the facts, we conclude that the trial court rightly decided that the land was exempt under the statute.

3. By the decree entered January 17, 1914, it is adjudged that all levies and assessments of taxes made against the land in question to this date for city or town purposes, and which included library fund, are cancelled. It is said in argument that the attention of the trial court was not called to chapter 52, Acts of the Thirty-Fifth General Assembly, which provides that lands provided for in section 616 shall not be exempt from taxation for library purposes, and it is contended by counsel for appellant that, as the decree cancels everything to the date of the decree, this was erroneous. Counsel for appellee concede this, or at least state that they make no claim of any right to cancel the library tax for the year 1913. Doubtless the matter of the amendment to section 616 in regard to the library tax was overlooked. At any rate, it ought not to be cancelled for the year 1913, and the decree should not be so construed. As stated, appellee concedes this to be so.

To the extent of the library tax for 1913, the decree is modified; in other respects affirmed. The costs will be taxed to appellant.

DEEMER, C. J., WEAVER and EVANS, JJ., concur.