STATE OF IOWA EX REL. WILLIAM J. PIEPER, appellant, v. WILLIAM
PATTERSON et al., members of Board of Trustees of Green
Bay Levee and Drainage District No. 2 of Lee County
and RAY B. MENKE et al., members of Board of
Supervisors, appellees.

No. 48721.

(Reported in 70 N.W.2d 838)

JUNE 7, 1955.

Hicklin & Hicklin, of Wapello, and Poor, Fischer, Cray & Walter, of Burlington, for appellant.

Robert N. Johnson, of Fort Madison, County Attorney for Lee County, and attorney for the Board of Supervisors of Lee County.

J. Francis Phelan, of Fort Madison, for appellee Ray B. Menke and appellees William Patterson, John G. Schroeder and Frank K. Rogers, members of the Board of Trustees of Green Bay Levee and Drainage District No. 2, Lee County, Iowa.

GARFIELD, J.—The action is in the nature of quo warranto on the relation of William J. Pieper to test the legality of defendant Ray B. Menke's claim to the office of trustee representing Election District No. 1 of Green Bay Levee and Drainage District No. 2 of Lee County. Rules 299 to 305, Rules of Civil Procedure, provide for such an action. Leave of court to bring the action was granted Pieper under rule 300, the county attorney and attorney general having failed on demand to do so. The relator claims he, not Menke, was duly elected trustee. The case was heard on stipulated facts. The district court upheld the legality of Menke's election and plaintiff appeals.

Green Bay Levee and Drainage District No. 2 is operating under chapter 462, Code, 1954. It is divided into Election Districts Nos. 1, 2 and 3, each represented by one trustee. The election in controversy here, held January 17, 1953, was of a trustee to represent Election District No. 1 for a term of three years from January 24, 1953. The trustees of the levee and drainage district then in office, acting as an election board, certified defendant Menke as having been duly elected as a new trustee.

The legality of Menke's election depends upon (1) whether the proper method of counting the votes was used, and (2) whether relator Pieper was "the bona fide owner of agricultural land in the election district" No. 1, so as to be eligible for trustee under section 462.7, Code, 1954. The statutes that govern counting the votes are sections 462.11, 462.12, which provide, so far as pertinent here:

"462.11 Qualifications of voters. Each landowner over twenty-one years of age * * * and any railway or other corporation owning land in said district assessed for benefits shall be entitled to one vote only, except as provided in section 462.12.

"462.12 Votes determined by assessment.

"1. When a petition asking for the right to vote in proportion to assessment of benefits at all elections for any purpose thereafter to be held within said district, signed by a majority of the landowners owning land within said district assessed for benefits, is filed with the board of trustees, then, in all elections of trustees thereafter held within said district, any person whose land is assessed for benefits * * * shall be entitled to one vote for each ten dollars or fraction thereof of the original assessment for benefits against the land actually owned by him in said district at the time of the election, * * *. The vote of any landowner of the district may be cast by absent voters ballot * * *. For the purpose of this chapter all landowners of the district shall be considered qualified voters, regardless of their place of residence."

Prior to December 30, 1952, there were 133 landowners in Green Bay Levee and Drainage District No. 2. One Lodwick and wife made two warranty deeds (Exhibits A and B) dated December 30, purporting to convey a triangular piece of ground containing 27.095 acres in the district to 100 grantees, 80 in Exhibit A and 20 in Exhibit B. The deeds were recorded January 10, 1953, together with nine similar deeds which purported to convey certain tracts to 22 relatives of the grantors. Thus on January 10, according to the records in the county auditor's office, there were 255 landowners in the district.

About 11 of the 27.095 acres were under cultivation. The rest of the tract has not been cultivated but is suitable for hunting, fishing and cabin sites along the Mississippi River. The deeds, Exhibits A and B, were made without monetary consideration paid or received. They were made at the instigation and procurement of the grantors and the grantors of the other nine deeds for the purpose of making the grantees landowners within the meaning of Code chapter 462. The grantors thereafter asked the grantees to petition for a change in the manner of

counting votes in the election of January 17, 1953, and subsequent elections in the district from the manner stated in section 462.11 to that specified in 462.12.

Three of the grantees in Exhibits A and B were minors. All grantees except the minors took title with knowledge of the purpose of the grantors and subsequently signed "a petition asking for the right to vote in proportion to assessment of benefits" under section 462.12, but there was no agreement to sign the petition when the deeds were made. The petition above referred to was filed with the board of trustees January 10, 1953, when the deeds were filed for record. It had been prepared and circulated between December 30 and January 10 by the grantors of the deeds and their agents for the purpose of changing the manner of voting as above explained. One hundred of the 141 signers of the petition were grantees in the deeds. They were not record titleholders when they signed the petition but became such the day the deeds and petition were filed.

It is agreed that if the grantees in Exhibits A and B were not "landowners" under sections 462.11 and 462.12, a majority of the landowners did not petition for the right to vote in proportion to assessment of benefits and defendant Menke was legally certified as elected trustee from Election District No. 1. If, however, the grantees in these deeds were "landowners" under these Code sections, then a majority of landowners filed the petition for the change in counting the votes and relator Pieper, if legally qualified to hold the office, was elected trustee of the election district.

On the question whether relator was "the bona fide owner of agricultural land in the election district" No. 1, to be eligible for trustee under section 462.7, it is stipulated he was the grantee in a deed from one Willard and wife dated and filed for record January 16, 1953 (the day before the election) of a one-acre tract, triangular in shape, part of a larger triangular tract of 11 acres in the district. The grantors reserved an option to purchase the acre for $200 on or after January 25, 1956 (the day after Pieper's term as trustee, if elected, would expire).

Relator owns 145 acres in Election District No. 2 in the

levee and drainage district but no land in Election District No. 1 except the acre above described. He acquired this one acre for the principal purpose of making himself eligible for trustee in Election District No. 1. He did not farm or receive income from the acre in 1953 (trial was had in February or March 1954), but Willard, his grantor, did. Pieper intended to farm the tract and pay the taxes on it in 1954 and they are assessed to him. The one acre is three miles from the land relator owns and operates in Election District No. 2. It is not adjacent to a highway and is accessible only by use of the drainage district right of way for ditch.

The grantees in the deeds, Exhibits A and B, live in various parts of the United States, from California to Chicago. The record seems to indicate that in most and perhaps all instances where any grantee is married his or her spouse is also made a grantee.

Upon the above facts the district court held relator was not "the bona fide owner of agricultural land in the election district" No. 1 within the meaning of section 462.7 and was therefore ineligible for trustee. Also that the grantees in Exhibits A and B were not "landowners" within the purview of sections 462.11, 462.12. The court also thought that to grant relief would violate the maxim that "he who comes into equity must come with clean hands." We are not persuaded the trial court reached a wrong result.

We have no difficulty in agreeing with the trial court that relator was not a bona fide owner of agricultural land in Election District No. 1. Presumably the legislature used the term "bona fide" in section 462.7 advisedly. It was inserted in the statute together with the word "agricultural" in 1951 by chapter 176, Acts of the Fifty-fourth General Assembly. It is our duty to give the term "bona fide" effect. Iowa Mutual Tornado Ins. Assn. v. Fischer, 245 Iowa 951, 956, 65 N.W.2d 162, 165, and citations; Farwell v. Des Moines Brick Mfg. Co., 97 Iowa 286, 290, 66 N.W. 176, 35 L. R. A. 63.

The term "bona fide" means in good faith—honesty as distinguished from bad faith; without fraud or unfair dealing. See Appanoose County Farm Bureau v. Board of Supvrs.,

218 Iowa 945, 947, 948, 256 N.W. 687; Wolfe v. Wolfe, 45 Ohio App. 309, 187 N.E. 86, 87; 11 C. J. S., pages 387 et seq.

It is perhaps true this acre of ground is agricultural land in the sense that it is not urban, timber or mineral land. But it is only an acre in size, triangular in shape, remote from relator's other land, inaccessible by public road and can be reached at all only with inconvenience. It seems improbable relator could profitably utilize it for agricultural purposes. Such a tract so situated would be regarded as more of a garden spot than a tract of agricultural land.

It is of some significance that the legislature, for certain purposes, has defined agricultural lands in part as tracts of ten acres or more in good faith used for agricultural or horticultural purposes. Code section 426.2. See also section 404.15.

Under a predecessor to section 404.15 granting a tax exemption to tracts of more than ten acres in good faith occupied and used for agricultural or horticultural purposes we have held there must be more than mere actual occupancy and use for such a purpose, else there would have been no occasion for use of the term "in good faith", and that the intent of the owner in acquiring the land is of controlling importance.

Farwell v. Des Moines Brick Mfg. Co., supra, 97 Iowa 286, 290, 66 N.W. 176, 178, 35 L. R. A. 63, 67, goes on to say: "So, if the plaintiff acquired title to this land for purposes of speculation, with the intention of laying it out into lots, and selling the same, an occupancy or use of the land, temporarily, for farming purposes, would not be in good faith, for such purposes, within the contemplation of the statute. If, however, his main purpose in making the purchase of this land was to use it for ordinary agricultural purposes, and so far it has been thus used and occupied, then we should say such use and occupancy had been, and was, in good faith. It becomes, then, a question of the intent of the owner * * *."

The Farwell decision is followed in Windsor v. Polk County, 109 Iowa 156, 159, 80 N.W. 323, 324, which states: "In our opinion, the statute was intended to exempt lots of more than ten acres, which are used for the purposes mentioned, as a source of income or profit; and when the horticultural or agricultural use is merely contributory to the comfort or conven-

ience, or for the purpose of adorning the home, it cannot be said to be in 'good faith,' within the meaning of the law."

Unless we depart from the reasoning of the Farwell and Windsor opinions we must conclude relator is not a bona fide owner of agricultural land in the first election district in the sense contemplated by section 462.7. Relator admits and it is obvious his principal purpose in acquiring this one acre was to attempt to make himself eligible for the office of trustee. Any intent to use the tract for agricultural purposes was merely incidental or colorable, with little or no thought of income or profit therefrom.

 While our holding that relator is not eligible under section 462.7 for the office he claims is determinative of the case, we are disposed to agree also with the trial court's conclusion the grantees of the deeds, Exhibits A and B, were not, under the circumstances here, landowners within the purview of sections 462.11, 462.12.

It seems fair to infer that until Exhibits A and B were made, Lodwick, the grantor, and Pieper, the relator, were unable to persuade a majority of landowners in the levee and drainage district to petition for a change in the manner of counting votes from that stated in 462.11 to that set out in 462.12. Apparently a majority of the owners were satisfied with the existing method of counting the votes.

Someone then evolved the clever scheme of circumventing the will of the majority of owners by the execution of gratuitous conveyances to relatives, friends and acquaintances, 122 in all, in various parts of the country. As stated, the two principal deeds purported to convey 27.095 acres, only 11 of which were fit for agricultural purposes, to 100 grantees scattered about from Pasadena to Chicago. If such manipulation were to receive the sanction of a court of equity (the action is triable by equitable proceedings, rule 299, Rules of Civil Procedure), it would seem the only effective course open to those who had been in the majority would be to make gratuitous deeds to a larger number of relatives, friends and acquaintances. Thus the manner of counting votes would depend upon which faction could ultimately name the greater number of grantees in gratuitous

conveyances, not—as the statute contemplates—on the will of a majority of actual landowners. ·

It is a familiar rule of statutory construction that a statute will, if fairly possible, be construed so unreasonable or absurd consequences will be avoided. Worthington v. McDonald, 246 Iowa 466, 470, 68 N.W.2d 89, 92, and citations; Case v. Olson, 234 Iowa 869, 873, 14 N.W.2d 717, 719, and citations. To hold, under the circumstances here, the grantees in these gratuitous deeds became landowners within the purview of sections 462.11 and 462.12 would, we think, result in unreasonable and absurd consequences never intended by the legislature. See citations last above, also Middle Tennessee Electric Membership Corp. v. State ex rel. Adams, 193 Tenn. 513, 246 S.W.2d 958, 959.

Another familiar rule which seems applicable here is that ordinarily the spirit of a statute will prevail over the strict letter thereof. See Case v. Olson, supra; Sinclair Refining Co. v. Burch, 235 Iowa 594, 596, 16 N.W.2d 359, 361, and citations; Lakehead Pipe Line Co. v. Dehn, 340 Mich. 25, 64 N.W.2d 903, 909; 82 C. J. S., Statutes, section 325. While perhaps the grantees in these deeds are landowners within the strict letter of sections 462.11 and 462.12, we are satisfied they may not fairly be termed landowners within the spirit of the statute.

It is unnecessary to determine whether relief should be denied relator on the strength of· the maxim "he who comes into equity must come with clean hands." For a recent discussion of the application of this doctrine see Sisson v. Janssen, 244 Iowa 123, 130, 131, 56 N.W.2d 30, 34.—Affirmed.

All JUSTICES concur.