FEDERATED MUTUAL IMPLEMENT & HARDWARE INSURANCE CO., Plaintiff,

v.

Floyd A. ROUSE, James Kahler, Mary M. Kahler, Warren C. Sturtz, Francis Beadles, and Paul Durham, Defendants.

Civ. No. 715.

United States District Court
N. D. Iowa, E. D.

Aug. 9, 1955.

Robert G. Riley, and E. Eugene Davis (Evans, Duncan, Jones, Hughes & Riley), Des Moines, Ia., for plaintiff.

Thomas C. Strack (Willoughby, Strack & Sieverding), Grundy Center, Ia., for defendant Floyd A. Rouse.

Leo J. Cohrt (Swisher, Cohrt & Swisher), Waterloo, Ia., for defendants James Kahler and Mary M. Kahler.

Marion G. Mickelson (Dickens & Mickelson), Toledo, Ia., for defendants Warren Sturtz, et al.

GRAVEN, District Judge.

The plaintiff issued a so-called garage liability policy to the defendant Floyd A. Rouse. In this action it seeks to have it declared as against all of the defendants that it is not under any liability under that policy based upon a collision in which a certain Plymouth automobile was involved.

There is involved in this action the effect of certain provisions of the recently enacted Iowa Motor Vehicle Certificates of Title Act. That Act was enacted by the Iowa legislature in 1953 as chapter 127, Acts of the Fifty-fifth General Assembly. It became effective October 1, 1953. The provisions of that Act appear nonsequently in chapter 321, Code of Iowa 1954, I.C.A. The principal controversy of the parties is as to the liability of a vendor of an automobile for a tort subsequently committed by his vendee in the operation of it where the parties to the transaction failed to comply with the provisions of the Act in connection with the transfer.

The defendant Floyd A. Rouse was the vendor of an automobile and the defendant Warren C. Sturtz was the vendee thereof in a transaction in which there was a noncompliance with the provisions of the Act. The other defendants are

persons who subsequent to the transaction sustained damages as the result of claimed negligence on the part of the defendant Sturtz in the operation of the automobile.

The plaintiff is an insurance corporation organized and existing under the laws of the state of Minnesota. All of the defendants are citizens of the state of Iowa. The amount in controversy, exclusive of interest and costs, is in excess of $3,000.

The defendant Rouse is engaged in the garage and automobile business at Grundy Center, Grundy County, Iowa, under the trade name of Rouse Motor Company. He was a licensed automobile dealer under the laws of the state of Iowa. On or about July 1st, 1954, the plaintiff issued Auto Garage Liability Policy No. 421.374 to the defendant Rouse covering the period from July 1st, 1954, to July 1st, 1955. That policy, among other things, insured the liability of Rouse arising out of the ownership, maintenance or use of automobiles in connection with the operations necessary to his business. It also insured the liability of persons using automobiles covered by the policy with his permission. It is as to this policy that the plaintiff seeks a declaration of nonliability.

The significant details of the transaction between the defendant Rouse and the defendant Sturtz can better be brought into proper focus when considered against the background of the Iowa Motor Vehicle Certificates of Title Act. That Act purported to make many important changes in the law relating to the disposition of motor vehicles. The Act makes provision for certificates of title for motor vehicles, for the transfer of them, and for the noting of liens thereon. Section 7 of the Act, Iowa Code 1954, Section 321.24, I.C.A. provides, in part, as follows:

" * * * The certificate of title shall contain upon the reverse side a form for assignment of title or interest and warranty thereof by the owner, for reassignments by a licensed dealer and for application for a new certificate of title by the transferee as provided in this chapter. * * * "

Section 19 of the Act, Iowa Code 1954, Section 321.48, I.C.A. provides, in part, as follows:

"1. When the transferee or purchaser of a vehicle is a dealer who holds the same for resale and operates the same only for purposes incident to a resale and displays thereon the registration plates issued for such vehicle, or displays his dealer plates thereon or does not drive such vehicle or permit it to be driven upon the highways, such transferee shall not be required to obtain transfer of registration or a new certificate of title but upon transferring his title or interest to another person shall execute and acknowledge an assignment and warranty of title upon the certificate of title assigned to him and deliver the same to the person to whom such transfer is made. * * * "

Section 20 of the Act, Iowa Code 1954, Section 321.49, I.C.A. provides, in part, as follows:

"1. If an application for transfer of registration and certificate of title is not submitted to the county treasurer of the residence of purchaser or transferee within five [5] days of actual change of possession, a penalty of five [5] dollars shall accrue against said vehicle, and no registration card or certificate of title shall thereafter be issued until penalty is paid."

Section 16 of the Act, Iowa Code 1954, Section 321.45(2), I.C.A. provides, in part, as follows:

"2. Except as provided in section twenty-one [21] of this Act, no person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such

vehicle * * * ; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title * * · *. No court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title * * * duly issued in accordance with the provisions of this chapter."

Section 21 of the Act, Iowa Code 1954, Section 321.50, I.C.A. relates to the noting of liens on the certificate of title. Included among such liens are conditional sale contracts.

Under the provisions of the Act where a motor vehicle is acquired by a licensed dealer for purposes of resale he is not required to have a new certificate of title issued to him. Under the provisions of the Act when a licensed dealer sells such motor vehicle it is his duty to assign the certificate of title to the purchaser, whether or not such motor vehicle is the subject of a conditional sale contract, and it is the duty of the purchaser to make application for and to secure the issuance to him of a new certificate of title. Under the provisions of the Act if the motor vehicle is the subject of a conditional sale contract and the seller wishes to protect his security rights thereunder, it is his duty to have the conditional sale contract noted as a lien on the title certificate issued to the purchaser. See also section 3 of the Act, I.C.A. § 321.18.

On March 17th, 1954, the defendant Rouse acquired for purpose of resale a 1947 Plymouth automobile. He acquired it from one Paul Allen Yeager, also known as Paul A. Yeager. Yeager held a certificate of title to the automobile which had been issued to him under the provisions of the Iowa Motor Vehicle Certificates of Title Act. In connection with the transfer Yeager assigned the title certificate to Rouse, using for that purpose the form of assignment provided on the reverse side of the certificate. Upon the execution of the assignment Yeager delivered the certificate of title to the defendant Rouse. In the assignment the name of the latter appears as "Rouse Motor Co."

On March 24th, 1954, the defendant Rouse sold the automobile to the defendant Sturtz under a conditional sale contract. That defendant was at the time working on a farm in the vicinity of Grundy Center. The conditional sale contract provided for the payment of the sum of $403.86, payable in monthly installments extending through March, 1955. At the time of the closing of the sale the defendant Rouse handed the certificate of title to the defendant Sturtz. The latter signed the form on the reverse of the certificate entitled "Application for Certificate of Title" without filling in the blanks in the form and returned the certificate to the defendant Rouse. The latter placed the certificate in his file where it remained until the time of trial. The defendant Rouse never executed the form entitled "Reassignment By Iowa Licensed Dealer" contained on the reverse side of the certificate. The defendant Sturtz neither filled in the blanks in the form for "Application for Certificate of Title" nor presented the certificate to the County Treasurer of Grundy County, Iowa, for transfer.

Following the execution of the conditional sale contract, the defendant Rouse delivered possession of the automobile to the defendant Sturtz, and, from then until the automobile was damaged beyond repair in a collision later referred to, he was in sole control and possession of it and used it entirely for his own purposes. It is not indicated that the defendant Sturtz was at any time in default on the payments specified in the conditional sale contract.

On December 24th, 1954, the defendants Francis Beadles and Paul Durham, who were acquaintances of the defendant Sturtz, desired to attend Christmas eve midnight church services. The defendant Sturtz, who was then working in the vicinity of Gilman, Iowa, agreed to trans-

port them in his automobile. While on that trip a collision occurred between his automobile and an automobile owned and operated by the defendant James Kahler. Both of the vehicles involved in the collision were damaged beyond repair. The defendant Mary M. Kahler was a passenger in the car operated by James Kahler. The defendants James Kahler, Mary M. Kahler, Francis Beadles, and Paul Durham sustained personal injuries as a result of the collision. Following the collision those defendants made claim that the defendant Rouse was liable to them for the damages sustained by them as a result of the collision. The defendant Rouse informed the plaintiff as to the making of those claims. This declaratory judgment action followed.

If the transaction and collision in question had taken place prior to the time the Iowa Motor Vehicle Certificates of Title Act became effective, the defendant Rouse undisputedly under the Iowa law would have been under no liability to the defendants James Kahler, Mary M. Kahler, Francis Beadles, and Paul Durham. Those defendants so concede. However, the transaction and collision in question took place after the effective date of the Act. It is the claim of the defendants James Kahler, Mary M. Kahler, Francis Beadles, and Paul Durham that under and by virtue of certain provisions of that Act the defendant Rouse is under liability to them for the damages occasioned to them by the collision. The plaintiff and the defendant Rouse contend to the contrary. The defendant Sturtz has apparently aligned himself with the defendants James Kahler, Mary M. Kahler, Francis Beadles, and Paul Durham.

The defendant Rouse failed to comply with the provisions of paragraph 1 of section 19 of the Iowa Motor Vehicle Certificates of Title Act in that "upon transferring his title or interest" in the automobile in question he did not "execute and acknowledge" an assignment and warranty of title upon the certificate of title. Therefore, at the time of the collision the situation was that the cer-

tificate of title portrayed the defendant Rouse as the transferee thereof by proper assignment under the provisions of the Act. The certificate did not portray a proper transfer thereof under the Act to the defendant Sturtz. The defendants other than the defendant Rouse make two contentions. For convenience those defendants will be referred to as the defendants unless otherwise noted. The first contention of the defendants is that under the provisions of the Act the defendant Rouse has to be regarded as the owner of the automobile in question at the time of the collision. In connection with that contention they stress the following portions of section 16(2) of the Act:

"2. Except as provided in section twenty-one [21] of this Act, no person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle; * * *. No court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of * * * unless evidenced by a certificate of title * * *."

Their second contention is that as such "owner" he is vicariously liable for the claimed tortious conduct of the defendant Sturtz in connection with the operation of the automobile in question. Both of those contentions are controverted by the plaintiff and the defendant Rouse.

More than thirty states have laws providing for the issuance of certificates of title to motor vehicles. The Iowa Motor Vehicle Certificates of Title Act is substantially like the Ohio, R.C. § 4505.01 et seq., Florida, F.S.A. § 319.08 et seq. and Nebraska, R.R.S.1943, § 60–101 et seq. acts. An excellent discussion of the Iowa Act and other acts is contained in two articles by Professor Richard S. Hudson

of the College of Law of Drake University. Those articles are "1953 Iowa Motor Vehicle Certificate Act," 3 Drake L.Rev. 3 (1953) and "Iowa Motor Vehicle Certificate of Title Law II," 4 Drake L.Rev. 86 (1954).

In a number of cases arising under the motor vehicle certificates of title acts of other states, which acts contained provisions similar or somewhat similar to those contained in the Iowa Act, it has been held that the certificate of title is conclusive on the courts. See cases discussed in Drake Law Review articles, supra. The rationale of those cases would seem to be that the certificate of title constitutes a sort of a statutory "iron curtain" back of which the courts may not look. The argument of the defendants in the present action is to the effect that because of the provisions of the Iowa Act referred to, this Court, in passing upon the question of ownership for purposes of vicarious tort liability herein, may not look back of nor beyond the certificate of title in question and that the ownership portrayed by that certificate is conclusive on this Court.

It is apparent that under the various acts the certificate of title to a motor vehicle has been made a very important document or instrument in connection with the ownership and transfer of ownership thereof. There are, of course, many documents or instruments which are of importance in connection with the ownership of property. There are instances in which a document or instrument on its face evidences ownership not in accord with the facts. However, in most of such situations such evidence of ownership is not conclusive and a party in interest may upon proper showing secure a court ruling, decree or judgment which in effect adjudicates the ownership to be in accord with the facts. In making such adjudication the court, in effect, looks back of or beyond the document or instrument.

Since the Ohio, Florida and Nebraska acts relating to certificates of title to motor vehicles contain provisions similar to the provisions of the Iowa Act here under consideration, the parties have cited and discussed a number of decisions by the courts of those states construing those provisions.

Long prior to the enactment of the Iowa Motor Vehicle Certificates of Title Act, the Iowa legislature enacted what is generally referred to as the Owners' Responsibility Law. That law imposed liability upon the owner of a motor vehicle for the tortious conduct of one operating it with his consent. The real controversy in the present action concerns the effect of the Iowa Motor Vehicle Certificates of Title Act upon the Owners' Responsibility Law. Because of the absence of a similar law in Ohio, Nebraska, and Florida, the decisions by the courts of those states throw little light on the question here involved.

The question as to the effect of the Iowa Motor Vehicle Certificates of Title Act upon the Iowa Owners' Responsibility Law requires a consideration of the pertinent existing statutes at the time the Act was enacted in 1953, as chapter 127 of the Acts of the Fifty-fifth General Assembly.

At the time of the enactment of the Act there were in existence a number of statutes relating to the registration of automobiles. There were numerous decisions under those statutes. The defendants in their brief correctly summarize those decisions as follows: "Under those decisions the Iowa Court has not considered the fact of registration or failure to transfer registration on a sale as conclusive evidence of ownership, but simply as some evidence of ownership or as creating an inference of ownership." The defendants further state in the brief: " * * * we concede that the prior decisions would result in a determination that Rouse was not the owner." The plaintiff and the defendant Rouse are in accord with those statements of the defendants. Some of the prior decisions were discussed by this Court in Denver-Chicago Trucking Co. v. Lindeman, D.C.1947, 73 F.Supp. 925, and Metropolitan Casualty Ins. Co. of New York v. Friedley, D.C.1948, 79 F.Supp. 978.

At the time of the enactment of chapter 127 there were in existence Iowa Code 1950, Sections 321.1, 321.1(36), 321.51 and 321.493 I.C.A. It is as to the effect of chapter 127 upon those sections that the parties are in disagreement. Those sections in their present form were enacted by the Iowa legislature in chapter 134, Laws of the Forty-seventh General Assembly 1937. Section 511 of that chapter appears as Iowa Code 1950, Section 321.493, I.C.A. Section 1 of that chapter appears as Iowa Code 1950, Section 321.1, I.C.A. Subsection 33 of section 1 of that chapter appears as Iowa Code 1950, Section 321.1(36), I.C.A., and section 82 of that chapter appears as Iowa Code 1950, Section 321.51, I.C.A. All of those statutes are contained in chapter 321. Iowa Code 1950, Section 321.493, I.C.A. is as follows:

"In all cases where damage is done by any car by reason of negligence of the driver, and driven with the consent of the owner, the owner of the car shall be liable for such damage."

Iowa Code 1950, Section 321.1, I.C.A. is, in part, as follows:

"The following words and phrases when used in this chapter shall, for the purpose of this chapter, have the meanings respectively ascribed to them."

Iowa Code 1950, Section 321.1(36), I.C.A. is as follows:

" 'Owner' means a person who holds the legal title of a vehicle or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this chapter."

Iowa Code 1950, Section 321.51, I.C.A. reads as follows:

"The owner of a vehicle who has made a bona fide sale or transfer of his title or interest and who has delivered possession of such vehicle to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another."

Those four sections together constitute what is commonly referred to as the Owners' Responsibility Law.

The Fifty-fifth General Assembly, in enacting chapter 127, made no reference to or mention of any of those sections. As heretofore noted, section 16 of that chapter, Iowa Code 1954, Section 321.45, I.C.A. provided, in part:

"2. Except as provided in section twenty-one [21] of this Act, no person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title * * * assigned to him for such vehicle; * * *. No court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration * * * unless evidenced by a certificate of title * * *."

The parties in their briefs covered a wide area. The real controversy between them can be brought into sharper focus by setting out certain statements from the defendants' brief. The defendants in their brief state, in part, as follows:

"The first question presented is whether Rouse, under the circumstance presented, is the owner within the meaning of Section 321.493 and more specifically whether Sections 321.1(36) and 321.51 are in conflict with Section 321.45, and, if so, do the former control or limit the latter. * * *

"Furthermore, the said Section provides that no Court in any case at law or equity shall recognize the right, title, claim or interest of any person in and to any car subject to

registration sold or disposed of unless evidenced by a C.T. * * *. Thus, the C.T. issued affords the only means of proving such interest. It is the only evidence of title to be recognized.

"* * * If no rights, title, claim or interests are acquired by a purchaser because of failure to comply with the statute, then of necessity the rights, title and interests of the owner or certificate holder must remain in him.

"It must follow that Rouse, because of his failure to comply with the Statute, remained the owner, and is such owner within the contemplation of Section 321.493 (Civil Liability Statute) unless he is relieved of such liability by reasons of Sections 321.1(36) and 321.51 of the Code. Those Sections, if considered alone, and in utter disregard of Section 321.45, might permit plausible argument that Rouse is not the owner, and hence is not liable under Section 321.493 as an owner. * * * While Sections 321.1(36) and 321.45 were not amended, the adoption of Section 321.45 requires their construction, not in the light of the former provisions of the Motor Vehicle Act, but in a manner as though Section 321.45 were originally a part of the Statutes when Sections 321.1(36) and 321.51 were first enacted.

"We do not believe that Sections 321.1(36) and 321.51 are repugnant to Section 321.45, but that they can be interpreted consistently together so as to give effect to all portions of the Statute. If they are repugnant, then effect must be given to Section 321.45 as that most recently adopted. * * *

"No question of repeal by implication arises. The various Sections are not repugnant to one another and can be construed to give force and effect to each. Concept of ownership has not changed. 'Owner'

still means the person holding legal title (Section 321.1(36)). The only changes are those providing for the means of changing that ownership. A compliance with the law relating to change of ownership relieves the owner of liability for negligence in the hands of the transferee. If the Statute is not observed the owner has not transferred such ownership, and continues to be the owner and responsible in damages for the negligence of the driver."

The Court is of the view that in the final analysis the real question in this action is as to the intent of the Iowa legislature in connection with the legislation here under consideration.

The debates in the Iowa legislature are not reported. The reports of its committee usually contain only the recommendations of the committees and nothing else. Therefore, there is usually a paucity of legislative record bearing on legislative intent. See Note, "Inadequacy of Legislative Recording in Iowa," 35 Iowa L.Rev. 88(1949).

At the 1953 session of the legislature identical bills were introduced in the House and in the Senate providing for a Motor Vehicle Certificates of Title Act. The Senate bill was the one enacted as chapter 127. Attached to the House bill (H.F. 260, 55th General Assembly) was an explanation. That explanation was as follows:

"'(1) It is another step toward obtaining uniformity of the motor vehicle laws between the states. Thirty-four states presently provide for the issuance of title to motor vehicle owners.

"'(2) The purchaser of a motor vehicle can demand a clear title from the seller which means that liens on the motor vehicle would have to be satisfied before the sale is complete. This protects a buyer from unknowingly purchasing a mortgaged car.

"'(3) It reduces materially the chances of Iowa becoming a "dumping ground" for stolen vehicles and

will tend to reduce insurance rates in Iowa.

" '(4) It provides the vehicle owner a simple means of definitely proving to anyone in any state of his rightful and unencumbered ownership to such vehicle.

" '(5) Since the registration receipt on the steering column of the car would no longer be sufficient to dispose of the vehicle, it will substantially reduce the temptation to steal cars in Iowa for the purpose of sale.

" '(6) Since this bill provides for the issuance of the certificate of title at the county treasurer's office, there will be no delays nor basic change in present method of transferring vehicles from dealer to owner or from one owner to another.' " Hudson, "1953 Iowa Motor Vehicle Certificate of Title Law", 3 Drake L. Rev. 3 fn. 3 (1953).

At the time of the enactment of chapter 127 the 1950 code of Iowa was in effect. In chapter 127 the Iowa legislature in referring to existing Iowa statutes used the section numbers as they appeared in that code. Chapter 321 of that code is entitled "Motor Vehicles and Law of Road." In that chapter of that code grouped under the subheading of "Transfers of Title or Interest" appear sections 321.45 through 321.52 inclusive. In chapter 127 the legislature repealed or amended every statute in that subhead except section 321.51. It repealed or amended all of the statutes preceding that section in that subhead and the section following it.

Chapter 127 went into effect October 1, 1953. The next session of the legislature commenced in January, 1955. At that session the legislature enacted chapter 157 of the Acts of the Fifty-sixth General Assembly. In that chapter the legislature specifically provided that the pertinent sections of the Owners' Responsibility Law here involved were without the scope of Iowa Code 1954, Section 321.45, I.C.A. of the Iowa Motor Vehicle Certificates of Title Act.

Chapter 157, having been enacted subsequent to the occurrences which gave rise to this litigation, is not applicable to them. Some of the parties are of the view that the enactment of chapter 157 is of significance on the matter of legislative intent.

The Iowa Owners' Responsibility Law is one of long standing. In the 1935 Iowa Code the section imposing liability upon the owner of an automobile for the negligence of one driving it with his consent appears as section 5026. In that same code the definition of "owner" appeared as section 4863(8). Neither section contained any reference to the status for purposes of vicarious tort liability of one who had sold a motor vehicle under a conditional sale contract.

In two cases which arose out of occurrences happening in 1935 it was sought to impose liability under Iowa Code 1935, Section 5026 upon a conditional vendor of a motor vehicle for the damage occasioned by the negligence of his conditional vendee in the operation of it. Those asserting such liability claimed that since a conditional vendor held legal title to the motor vehicle in question he was the "owner" within the scope of Iowa Code 1935, Section 5026. The two cases are Hansen v. Kuhn, 1939, 226 Iowa 794, 285 N.W. 249, and Craddock v. Bickelhaupt, 1939, 227 Iowa 202, 288 N.W. 109, 135 A.L.R. 474. In both cases the Iowa Supreme Court held that the conditional vendor was not an "owner" within the purview of the Owners' Responsibility Law. While that litigation was pending the Iowa legislature in 1937 enacted chapter 134 of the Acts of the Forty-seventh General Assembly. In that chapter the legislature amended the definition of "owner" in the existing statute so as to specifically exempt a conditional vendor under the Owners' Responsibility Law. In the case of Hansen v. Kuhn, supra, the party seeking to impose liability upon the conditional vendor contended that the latter amendment to the Own-

ers' Responsibility Law, which specifically exempted a conditional vendor from liability thereunder, constituted a construction by the legislature that such vendor was not exempt from liability under the Law as it existed prior to the amendment. The Iowa Supreme Court rejected that contention. It regarded the amendment as having been passed for the purpose of removing doubt and not for the purpose of making a change in the existing law.

■■ The enactment of the Owners' Responsibility Law made a very important and sharp change in the Iowa law. At common law a person was, in general, only vicariously liable in tort where the tort was committed by his agent or servant in the course of the agency or employment. The Iowa Owners' Responsibility Law imposed vicarious liability upon the owner of a motor vehicle for the negligence of one operating it with his consent even though at common law no such liability existed. It provides a liability different from that growing out of the relation of master and servant. See Robinson v. Bruce Rent-A-Ford Co., 1927, 205 Iowa 261, 215 N.W. 724, 726, 61 A.L.R. 851. It does not create the relation of principal and agent. Lind v. Eddy, 1942, 232 Iowa 1328, 6 N.W.2d 427, 146 A.L.R. 695. The liability imposed by the Owners' Responsibility Law is not based on common law; it is based upon statute. See White v. Center, 1934, 218 Iowa 1027, 254 N.W. 90, 94.

Many of the provisions of chapter 127 are couched in comprehensive and inclusive language. In his article in 3 Drake L.Rev. at 21–22, Professor Hudson, in discussing the language used in the different Motor Vehicle Certificates of Title Acts, states:

"It should be recognized, however, that whenever a statute is drafted in such inclusive and comprehensive language that purports to change generally accepted rules on the disposition of property, consequences will be felt in many areas perhaps not anticipated by the legislature."

The pivotal question in the present case is whether the Iowa legislature in enacting chapter 127 intended to encompass within the scope of that chapter the existing statutes relating to the vicarious liability of owners of motor vehicles for the tortious conduct of those operating them with their consent.

It was heretofore noted that at the next session of the Iowa legislature following the enactment of chapter 127 it enacted amendments which specifically removed the pertinent portions of the Owners' Responsibility Law here involved from the scope of chapter 127.

In the recent case of Anderson v. Hadley, Iowa 1954, 63 N.W.2d 234, at page 239, the Iowa Supreme Court stated:

"Ordinarily a change in the language of a statute indicates an intention to change its meaning, although an amendment may be enacted so the statute will correspond to what had previously been supposed was the law rather than to effect a change therein."

In that case the Court held that a change in the existing law had been made by the amendment under consideration.

In the case of Hansen v. Kuhn, supra, heretofore noted, an amendment to the Owners' Responsibility Law specifically exempting a conditional vendor from liability thereunder was held to be merely declaratory of the existing law. See also Johansen v. United States, 1952, 343 U.S. 427, 436, 72 S.Ct. 849, 96 L.Ed. 1051. It has been heretofore noted that vicarious liability imposed by the Owners' Responsibility Law was a liability specially imposed by statute. That imposed liability was fraught with serious consequences for owners of motor vehicles who gave permission to others to operate them. Where the owner of a motor vehicle is in fact the owner of it, he can, to a considerable extent, reduce his hazard as to liability under the Owners' Responsibility Law by withholding permission for use of his motor vehicle, by revoking such permission, and by limiting the scope and extent of the permission.

Where a person has parted with possession and control of a motor vehicle either under a conditional sale or an unconditional sale, he is helpless in the matter of control and in the matter of the uses to which it is put by his vendee. In the case of Hansen v. Kuhn, supra,. the plaintiff unsuccessfully sought to hold a conditional vendor liable under the Owners' Responsibility Law for the tortious conduct of his vendee in the operation of the motor vehicle which was the subject matter of the sale. In that case the Iowa Supreme Court pointed out, 285 N.W. at page 255, that if the theory advanced by the plaintiff was to be followed it would result in the vendor being the "liability insurer" of his vendee.

The special statutory liability imposed by the Owners' Responsibility Law is of great seriousness where such liability is imposed on one who is in fact the owner of the motor vehicle in question. The imposition of liability under that law on vendors of motor vehicles for the tortious conduct of their vendees in the operation thereof would be of greater seriousness and would constitute an extension of the responsibility provisions of that law to those who were not in fact the owners of the motor vehicles in question.

As heretofore noted, the Owners' Responsibility Law in the 1935 code contained no provision as to liability thereunder of conditional vendors. Question arose whether a conditional vendor was an "owner" within the purview of the law. See Craddock v. Bickelhaupt and Hansen v. Kuhn, supra. The Iowa legislature in 1937, as heretofore noted, amended the law so as to specifically exclude such vendors as "owners" within the purview of the law. Following the enactment of chapter 127 in 1953 question arose as to the liability of vendors of motor vehicles for the torts of their vendees in view of the enactment of that chapter. See 4 Drake L.Rev. 86, 90 fn. 8 (1955). In 1955 the Iowa legislature enacted chapter 157 of the Acts of the Fifty-sixth General Assembly. Section 8 of that Act provides as follows:

"Section three hundred twenty-one point four hundred ninety-three (321.493), Code 1954, is hereby amended by striking the word 'car' in lines two (2) and four (4) and inserting in lieu thereof in both lines the words 'motor vehicle'.

"Said section is hereby further amended by adding thereto the following: 'A person who has made a bona fide sale or transfer of his right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection two (2) of section three hundred twenty-one point forty-five (321.45) as amended shall not apply in determining, for the purpose of fixing liability hereunder, whether such sale or transfer was made.' "

In 1 Sutherland, Statutory Construction § 1931 (3d ed. 1943), the author, in discussing amendments, states:

"If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change —rebutting the presumption of substantial change."

On two different occasions the Iowa legislature has by specific amendments rather promptly made after the question arose spelled out that a vendor of a motor vehicle following the sale thereof is not within the scope of the Owners' Responsibility Law.

Section 321.51 of the Code of 1950, I.C.A. provided that:

"The owner of a vehicle who has made a bona fide sale or transfer of his title or interest and who has de-

livered possession of such vehicle to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another."

That section of the existing Owners' Responsibility Law, as heretofore noted, appeared in the 1950 code in a subhead containing several sections as to the transfer of interests in automobiles. The legislature in enacting chapter 127 repealed or amended all of the sections in that subhead both before and after section 321.51 and left that section standing unrepealed and unamended. Such action on the part of the legislature is some indication of legislative intent.

Chapter 127 as enacted makes no mention of or reference to any of the related statutes relating to the vicarious liability of the owner of a motor vehicle either in the body of it or in its title. The explanation attached to the House File which was identical to the Senate File enacted as chapter 127 makes no mention or reference to the Owners' Responsibility Law.

The extension of the provisions of the Owners' Responsibility Law so as to impose vicarious liability on the vendor of a motor vehicle for the negligence of his vendee in the operation thereof would constitute a great change in the provisions of that Law. In the recent case of Case v. Sioux City, Iowa 1955, 69 N.W.2d 27, where it was claimed that a recently enacted statute had imposed tort liability on lot owners in connection with snow removal where no such liability existed under the statute it superseded, the Iowa Supreme Court rejected that claim stating, 69 N.W.2d at page 29, "It would be expected the legislature would spell out such a great change * * * in very clear language."

■ The question as to the effect of the enactment of chapter 127 on the Iowa Owners' Responsibility Law is difficult and troublesome. It is the view of the Court that the indicia showing a legislative intent not to change the provisions of the Owners' Responsibility Law here

involved preponderates. It would seem that the Iowa legislature and the Iowa Supreme Court have consistently repelled all attempts to impose the special statutory liability contained in the Owners' Responsibility Law on those who were not in fact the owners of the motor vehicles in question.

■ The defendants make an alternative contention. They contend that if chapter 127 did not effect a change in the pertinent provisions of the Owners' Responsibility Law, the defendant Rouse does not come within the provisions of Iowa Code 1950, Section 321.51, I.C.A. which exempts from liability under the Owners' Responsibility Law an owner who "has made a bona fide sale on transfer of his title or interest". It is the claim of the defendants that a sale in which the provisions of the Motor Vehicle Certificates of Title Act have not been complied with does not constitute a "bona fide sale". In the recent case of State ex rel. Pieper v. Patterson, Iowa 1955, 70 N.W.2d 838, the Iowa Supreme Court had before it the construction of the term "bona fide" used in an Iowa statute relating to eligibility for voting in drainage districts elections. The Court in its opinion stated, 70 N.W.2d at page 841:

"The term 'bona fide' means in good faith—honesty as distinguished from bad faith; without fraud or unfair dealing. See Appanoose County Farm Bureau v. Board, 218 Iowa 945, 947–948, 256 N.W. 687; Wolfe v. Wolfe, 45 Ohio App. 309, 187 N.E. 86, 87; 11 C.J.S., Bona Fide, pages 387 et seq."

The defendant Rouse and the defendant Sturtz did not comply with the provisions of the Iowa Motor Vehicle Certificates of Title Act. However, giving the term "bona fide" the meaning but recently given to it by the Iowa Supreme Court, it cannot be said that the sale in question was not a "bona fide" sale.

It is the holding of the Court that neither the defendant Rouse nor the plaintiff are under any liability to the defendants James Kahler, Mary M. Kahler,

238

Warren C. Sturtz, Francis Beadles, and Paul Durham for any of the damages sustained by them which were occasioned by the collision in question.

It is the further holding of the Court that the plaintiff is under no liability to the defendant Rouse as to the collision in question under its Garage Liability Policy No. 421,374.

It Is Ordered that judgment shall be entered declaring the rights of the parties in accordance with the foregoing holdings.

It Is Further Ordered that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. the findings of fact, conclusions of law, and order for judgment in the foregoing opinion shall constitute the findings of fact, conclusions of law, and order for judgment in this case.